# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# AT LEXINGTON

CIVIL ACTION NO. 13-217-WOB-CJS

NANCY MARIE HELTON                                                                                                  PLAINTIFF

v.                          **REPORT AND RECOMMENDATION**

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY                        DEFENDANT

\* \* \* \* \* \* \* \* \*

Plaintiff Nancy Marie Helton brings this action under 42 U.S.C. § 405(g) challenging Defendant Commissioner's final decision denying her application for benefits under the Social Security Act. At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and therefore not entitled to benefits. As explained below, the ALJ's decision was supported by substantial evidence. It will therefore be **recommended** that Plaintiff's Motion for Summary Judgment (R. 20) be **denied** and the Commissioner's Motion for Summary Judgment (R. 21) be **granted**.

## I. STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Id.* at 406. "The substantial-

evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached. *Id*. (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that she is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate that she suffers from a severe impairment. *Id*. at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id*. at 804 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. pt. 404, subpt. P, app'x 1, then the claimant is presumed disabled regardless of age, education, or work

experience. *Id*. (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, the claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant work. *Id*. Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work which exists in the national economy. *Id.* (citing *Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was forty-two years old at the time of the ALJ's decision. (Administrative Record (A.R.) at 171). Plaintiff has obtained a general equivalency degree (*see id*. at 50, 201), and she has past relevant employment as a general office clerk (*id*. at 31-34, 62). Plaintiff currently works approximately three hours per week at a post office performing such duties as opening the office, unloading the mail, waiting on customers and preparing money orders. (*Id*. at 17, 32-33). Plaintiff states she is disabled as a result of the limitations posed by anxiety, depression, sleep apnea, high blood pressure, high cholesterol, carpal tunnel of both wrists, back and neck problems, decreased range of motion in left shoulder, and a prior history of breast cancer. (*Id*. at 200).

The ALJ reports that on November 18, 2010, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning November 17, 2010. (A.R. at 12). The Commissioner denied her claim initially and upon reconsideration. (*Id.*). Plaintiff requested a hearing, which was held before the ALJ on March 8, 2012. (*Id.* 28-66). During this hearing the ALJ heard testimony from Plaintiff and a vocational expert. (*Id.*). After receiving

3

testimony and reviewing the record, the ALJ issued a written decision on April 23, 2012, finding Plaintiff was not disabled. (*Id.* at 12-23).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (*Id.*). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment activity since November 17, 2010, the alleged onset date of disability.[1] (*Id.* at 14). At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, mild scoliosis, degenerative joint disease of the left knee, chronic obstructive pulmonary disease, carpal tunnel syndrome, history of breast cancer status post lumpectomy, obesity, depressive disorder, and panic disorder. (*Id.*). At step three, the ALJ analyzed Plaintiff's impairments and found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under the applicable Federal Regulations. (*Id.* at 14-16).

At step four, the ALJ considered the evidence and determined that Plaintiff had the residual functional capacity (RFC) to perform a limited range of light work, as described in 20 C.F.R. § 404.1567(b). (*Id.* at 16-21). Specifically, the ALJ found Plaintiff had the following RFC:

> lift 10 pounds frequently and 20 pounds occasionally; stand/walk 6 hours in an 8-hour day; sit 6 hours in an 8-hour day; occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds; never perform tasks requiring balance, such as at unprotected heights; occasionally stoop, kneel, crouch; never crawl; reaching (front and laterally) limited to frequent in the bilateral upper extremities; avoid concentrated exposure to temperature[] extremes; avoid concentrated exposure to vibration; avoid concentrated exposure to dusts, fumes, odors, gases, etc.; avoid all exposure to hazards such as moving machinery and unprotected heights; able to perform simple and some basic detailed tasks.

---

[1] The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2014. (A.R. 14).

(*Id.* at 16). The ALJ heard testimony from an impartial vocational expert (VE) who stated that based on the RFC provided by the ALJ, Plaintiff could perform her past relevant work as a general office clerk. (*Id.* at 21, 62-63). Accordingly, the ALJ found Plaintiff not "disabled" for social security purposes at step four and did not proceed to step 5 of the sequential analysis. (*Id.* at 21-22).

Plaintiff, through counsel, appealed the ALJ's decision to the Appeals Council. (*Id.* at 5). On May 6, 2013, the Appeals Council denied Plaintiff's request for review (*id*. at 1-3), rendering the ALJ's April 23, 2012, decision denying Plaintiff benefits the final decision of the Commissioner (*id.* at 12-23). On July 9, 2013, having exhausted her administrative remedies, Plaintiff timely filed a Complaint asserting that the ALJ's decision was not supported by substantial evidence. (R. 1).

Both Plaintiff and the Commissioner have filed a Motion for Summary Judgment. (R. 20, 21). In her Motion, Plaintiff argues that the ALJ erred by: 1) improperly weighing the opinion evidence and instead giving controlling weight to his "own legal/medical opinion"; and 2) not considering all of her limitations in determining that she could perform the duties of her past relevant employment as a general office clerk.

### III. ANALYSIS

    **A.    The ALJ properly considered the opinion evidence in determining the Plaintiff's RFC.**

Plaintiff argues that the ALJ erred in not properly considering the opinion evidence in making his RFC determination and instead gave controlling weight to his "own legal/medical opinion," which she argues was inconsistent with the record and not in accordance with *Gayheart v. Commissioner of Social Security*, 710 F.3d 365 (6th Cir. 2013). (R. 20-1, at 1, 17). It appears that what Plaintiff characterizes as the ALJ's "own legal/medical opinion" is the ALJ's RFC

determination. As the Commissioner correctly notes, she has the final responsibility for determining a claimant's RFC. *See* 20 CFR § 404.1527(d)(2); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ–not a physician–ultimately determines a claimant's RFC. . . . An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding."). An RFC determination is not a medical opinion, but a finding based on the record evidence of what a claimant can do despite her impairments. 20 C.F.R. § 404.1545(a); SSR 96-5p, 1996 WL 374183, at *5 (discussing difference between medical source statement and RFC assessment). The regulations require, however, that in making an RFC determination, the ALJ must evaluate the relevant medical evidence. 20 C.F.R. § 404.1545(3).

In cases such as this, where subjective symptoms, including pain, are at issue, the ALJ must apply a two-step analysis. *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 506 (6th Cir. 2013). First, the ALJ must examine whether the objective medical evidence supports a finding of an underlying medical condition that could cause the alleged pain. *Id*. Second, the ALJ must evaluate the intensity, persistence, and functional limitations of the symptoms by considering objective medical evidence, as well as the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions. *Id*. (citing 20 C.F.R. § 404.1529(c)(1)-(3)). While an ALJ

6

must consider these factors, he is not required to explicitly discuss them. *Ellison v. Comm'r of Soc. Sec.*, No. 5:12-cv-1941, 2013 WL 4050964, at *9 (N.D. Ohio Aug. 9, 2013).

Here, the record reflects that the ALJ considered the medical evidence in making the RFC determination. (A.R. at 17-21). The ALJ discussed in detail the results of Plaintiff's diagnostic testing, the findings of a consultative internal medicine examination, Plaintiff's treatment records for anxiety and depression, and the opinion evidence of Plaintiff's treating nurse practitioner, Amy C. Rose Terry, and consulting psychologist, Dr. Genthner. (*Id*.). After reviewing the medical record evidence, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (A.R. 20).

At the second step of the pain analysis, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they are inconsistent with the ALJ's RFC findings. (*Id*.). The ALJ explained:

> The undersigned has given careful consideration to the claimant's allegations that anxiety/panic attacks since early childhood, status post breast cancer with lumpectomy, arthritis of left knee, degenerative disc disease cervical spine, degenerative disc disease lumbar spine, carpal tunnel syndrome and chronic obstructive pulmonary disease, prevent her from working. . . . The objective medical evidence does not support the claimant's allegations of pain, limitations, and overall disability. The claimant reports a longstanding history of situational anxiety and depression, but she has been able to continue working despite these complaints. Moreover, the objective evidence shows that the claimant was not significantly limited more than has been allowed in the above-discussed residual functional capacity. She is status post a left breast lumpectomy for invasive carcinoma in the left breast in February 2010 followed by 33 radiation treatments, which were completed in April 2010. She complains of low back pain and neck pain but no surgical intervention has been recommended. The claimant is obese at five [] feet, five inches and 201 pounds. She has a general equivalency diploma and a valid driver's license. The claimant is currently undergoing outpatient mental health treatment and she is taking psychotropic medications. Outpatient mental progress notes disclose the claimant struggles with anxiety, but reported some relief when her mother who has dementia was placed in a nursing home in March 2011 (Exhibit

7

> 8F/1-3). The claimant was generally credible regarding the nature of her severe impairments. The claimant was not credible that her impairments precluded her from full-time work activities not inconsistent with the RFC, to include her past relevant work as a general office clerk. As of the date of the hearing, the claimant was still working part-time running a local post-office for about three hours each Saturday. This includes opening the office; unloading mail; waiting on customers; and preparing money orders. The claimant lives with her disabled minor child and next to her disabled sister. She noted that she is able to do some housework, driving and shopping but does have assistance from her sister. She is able to handle household bills and acts as the representative payee for her daughter. The Nurse Practitioner mental and physical assessments at Exhibits 14F and 15F have been considered. The limitations in both of these exhibits are found to [be] excessive and not supported by the medical evidence of record. The Administrative Law Judge has considered the claimant's post-hearing submissions at Exhibits 17F-19F and finds that they are consistent with the limitations set forth at the hearing to the vocational expert and herein. The claimant was not credible with regard to her allegations that she is unable to perform any type of work.

(A.R. at 20-21).

Thus, the ALJ found Plaintiff does have impairments that cause some significant limitations, although he also found Plaintiff's claims were not credible to the extent Plaintiff claimed her impairments prevented her from performing work requiring the stated RFC. In support of his RFC finding, the ALJ cited medical evidence, discussed the medical opinions, and provided reasons to make it clear why he was discrediting certain of Plaintiff's statements. (A.R. at 16-21).

Further, the record does not support Plaintiff's argument that the ALJ erred in his handling of opinion evidence. While "[g]enerally, the opinions of treating physicians are given substantial, if not controlling, deference," such opinions do not automatically bind the ALJ as the ultimate determination of disability is for the Commissioner. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). Instead, a treating source's opinion is given controlling weight only where two conditions are met: (1) the opinion is "supported by objective medical evidence," *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003), and

8

(2) the opinion is not inconsistent with the other substantial evidence in the record. *Coldiron*, 391 F. App'x at 440. If an ALJ determines a treating doctor's opinion does not meet these conditions, he may discount that opinion but must provide "good reasons" for doing so. *Id*. at 439-40.

Here, Plaintiff argues the ALJ failed to follow the treating physician rule and properly weigh the medical opinions of her treating physician, Dr. Shaikh, and the consulting psychologist, Dr. Genthner. She alleges that had the ALJ done so, a finding under the Act that she is disabled would have been required. (R. 20-1, at 18). The record, however, does not support her assertions.

First, the record does not provide any opinion evidence from Dr. Shaikh regarding limitations posed on Plaintiff's functioning as a result of her impairments. Instead, the record evidence from Dr. Shaikh consists of treatment notes. (A.R. 319-41, 388-401). While these treatment notes evidence Plaintiff's effort to seek relief for various conditions, including anxiety, depression, flu-like symptoms, acid reflux, and various complaints of pain, none of these records evidence any opinions regarding work restrictions or limitations. In addition, while Dr. Shaikh's notes contain a diagnosis of anxiety and depression, disability is determined by the functional limitations imposed by a condition and not the mere diagnosis of the condition. *See cf. Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("mere diagnosis [] says nothing about the severity of the condition.").

The only opinion evidence of record from a treating provider consists of the physical and mental assessments of nurse practitioner Terry.[2] (R. 555-60). The ALJ explained that he was

---

[2]While the Commissioner is correct that a nurse is not an "acceptable medical source" under the regulations (*see* 20 C.F.R. § 404.1513(a)), the ALJ properly considered her assessments as evidence from "other sources" on the severity of the impairment and how it affects Plaintiff's ability to function. (*See* 20 C.F.R. § 404.1513(d)(1)). (A.R. at 19, 21). However, "other sources," which includes nurse practitioners, are not entitled to any controlling weight. *See Neace v. Astrue*, 5:11-cv-202-KKC, 2012 WL 4433284, at *7 (E.D. Ky. Sept. 25, 2012) (opinion of physical therapist not entitled to controlling weight because not an acceptable medical source).

affording the opinions of nurse practitioner Terry little weight because her assessments of Plaintiff's physical and mental limitations were extreme and not supported by the record as a whole. (A.R. at 21). In addition, the ALJ noted that the limitations she assessed were also inconsistent with the mental and physical requirements of Plaintiff's current part-time position with the post office. (*Id*.). Thus, the ALJ provided good reasons for rejecting nurse practitioner Terry's opinions.

Further, Plaintiff's argument that the ALJ failed to properly weigh the opinion of consulting psychologist Dr. Genthner is also unsupported by the record. The ALJ expressly considered Dr. Genthner's opinion, as follows.

> The evidence further establishes the claimant was referred by the Administration for a consultative psychological evaluation on February 8, 2011. She was fully oriented and her thought processes were logical and goal directed. She had adequate judgment and insight into the nature of her problems. The claimant reported she completed the ninth grade and subsequently completed a general equivalency diploma. She had been married twice, and was separated from her second husband two years before after six years of marriage. She had two children, a son age 18 who was enrolled in college and a daughter age 8, both of whom lived with her. The claimant reported that she was working on a part-time basis (2 hour shifts covering staff leave) at a small post-office until it closed in January 2011. She exercised by walking with her daughter and talked to some women she used to work with on the phone occasionally, but did not socialize. She reported that she had a panic attack once a week, lasting for an hour or two. Diagnoses were panic disorder, not otherwise specified and depressive disorder, not otherwise specified. Global Assessment of Functioning was assessed at 55-60, indicative of moderate symptoms or difficulties in social, occupational, or school functioning. It was the examiner's opinion that the claimant has an adequate (no problems noted in this area) ability to retain and follow simple instructions; adequate ability for attention and concentration, adequate capacity to make simple work-related decisions; adequate ability to be aware of normal hazards and take appropriate precautions; mildly (would be expected to have difficulty performing in some traditional work settings) limited in her ability to understand, retain and follow detailed or complex instructions; mildly limited in her ability to carry out and persist at [ ] simple repetitive tasks without special supervision; mildly limited in her capacity to relate to employers and coworkers and to work with others without being distracted or overwhelmed; mildly limited capacity to deal with the public; mild (would be expected to have difficulty performing in some traditional work settings) to moderate (would require significant

structure and/or modifications in traditional work settings such as those found in a
sheltered workshop) limitations in her capacity to tolerate stress and pressure
associated with day-to-day work activity. (Exhibit 6F).

(A.R. at 19-20).[3] After consideration of Dr. Genthner's findings, the ALJ concluded that Dr. Genthner's evaluation supported the finding that Plaintiff was limited to simple tasks and some basic detailed tasks. (*Id*. at 16, 19-21). Thus, the record demonstrates that the ALJ adequately considered Dr. Genthner's findings in determining Plaintiff's RFC.

Contrary to Plaintiff's assertion, the ALJ's analysis of the opinion evidence does not run afoul of the Sixth Circuit's decision in *Gayheart*.[4] In *Gayheart*, the Sixth Circuit reaffirmed the standard for weighing medical opinions, including that "controlling weight" is a level of deference reserved for treating sources, and the Commissioner must provide good reasons for discounting the weight given to a treating source's opinion. (*Id*. at 375-76). As discussed above, there is no opinion evidence from an acceptable treating medical source for which the ALJ was to apply controlling weight. Further, although nurse practitioner Terry provided opinion evidence, it was not entitled to controlling weight, *see Neace v. Astrue*, 2012 WL 4433284, at *7, and the ALJ provided good reasons for rejecting the limitations provided therein finding them excessive and not supported by the record.

---

[3]While this recitation of Dr. Genthner's evaluation does not reference his finding that simple changes in routine may be somewhat overwhelming or debilitating to Plaintiff, his statement does not suggest severity at a disabling level as Plaintiff suggests. In fact, Dr. Genthner did not use a term from his scale to describe the severity. Instead, he stated the Plaintiff may be "somewhat" overwhelmed or debilitated by a change of routine, suggesting less than mild limitations. Plaintiff has not provided evidence to the contrary and, in fact, nurse Terry's assessment found Plaintiff had a "good" ability to "respond appropriately to changes in the work setting." (A.R. 556).

[4]Plaintiff argues that the ALJ violated the mandates of *Gayheart* by improperly giving controlling weight to his own "legal/medical opinion." (R. 20-1, at 17). However, as discussed above, the ALJ's RFC finding is not a medical opinion, but a finding based on the record evidence of what a claimant can do despite her impairments.

Plaintiff has failed to demonstrate that the ALJ's RFC determination, including his weighing of the opinion evidence, was not supported by substantial evidence. Instead, the record reflects that in making the RFC determination, the ALJ analyzed the medical record, including all opinion evidence, and also considered her activities of daily living, including her ability to work a few hours per week at the post office and her ability to care for her daughter[5] and mother.

### B. The ALJ's hypothetical question to the VE accurately described Plaintiff's limitations.

Plaintiff also asserts that the ALJ's decision is not supported by substantial evidence because he did not consider her pain, anxiety, fatigue, bilateral carpal tunnel syndrome, and her post surgical cancer and radiation condition in determining that she could perform the duties of her past relevant employment as a general office clerk. Plaintiff also argues that to the extent that it was discussed at the hearing, the VE testified that the limitations set forth by Dr. Genthner's opinion, including that she may be somewhat overwhelmed by simple changes of routine and has a mild to moderate limitation on her ability to tolerate stress and work pressures, would render her disabled. (R. 20-1, at 17). The record does not support Plaintiff's argument.

Upon determining Plaintiff's RFC, the ALJ sought the assistance of an independent VE to determine if she could return to her past relevant employment. "A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and

---

[5]Plaintiff's briefing references Plaintiff as "Ms. Lawrence" and argues that the ALJ's finding that she could care for her young daughter was error because her daughter lives with her ex-husband. (R. 20-1, at 17-18). The testimony in the case at bar, however, reflects that Plaintiff's daughter does live with her. (R. 47). Based on the use of an incorrect name, the Court assumes the reference to a young daughter living with an ex-husband relates to another claimant and was incorporated into Plaintiff's memorandum in error.

12

mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). It is well established that in posing a hypothetical question to a vocational expert, an ALJ must accurately describe Plaintiff's functional limitations, but he need only incorporate those limitations he finds to be credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

At the March 8, 2012, administrative hearing, the ALJ posed three hypothetical questions to the vocational expert. (A.R. 62-64). In the first question, the hypothetical person had functional limitations consistent with those the ALJ found for Plaintiff. (*Id*. at 62). Specifically, the ALJ instructed the VE to assume:

> an individual with degenerative disc disease of the cervical spine, degenerative joint disease of the lumbar spine; non-scoliosis [sic]; degenerative joint disease of the left knee; chronic obstructive pulmonary disease; carpal tunnel syndrome. In addition to breast cancer, a status-post lumpectomy; obesity; depressive disorder; a panic disorder; a mild - - there seems to be a mild limitation in social functioning; moderately limited in concentration, persistence and pace is mild, not moderate.
>
> Is able to lift 10 pounds frequently and 20 pounds occasionally; stand and walk six hours in an eight-hour day; sit six hours in an eight-hour day; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; never perform tasks for balancing; occasionally stoop, kneel and crawl, but never crawl.
>
> Reaching is limited to frequent. That's front lateral reaching on the upper extremities, no repetitive; should avoid concentrated exposure to dusts or fumes or concentrated exposure to vibrations or concentrated exposure to dust, fumes, odors, gases, et cetera; avoid all exposure to hazards such as moving machinery and unprotected heights; is able to perform simple and some basic detailed tasks.

(A.R. 62). The VE testified that based on these limitations, the Plaintiff could perform her past relevant employment as a general office clerk. (*Id.* at 63).

While the ALJ posed additional hypothetical questions incorporating the limitations set forth in nurse practitioner Terry's physical and mental assessments, and the vocational expert opined that

13

such limitations would render such a person unable to perform any jobs, the ALJ did not ultimately find Plaintiff was so limited. Despite Plaintiff's argument to the contrary, the VE did not opine that Plaintiff would be deemed disabled if she were restricted in her ability to tolerate change in routine and in her capacity to tolerate work stress and pressures.[6] Because an ALJ is permitted to rely upon vocational expert testimony that is given in response to an accurate hypothetical, the ALJ did not err in relying on the expert's response to the first hypothetical that contained the RFC determination of the ALJ.

## IV. CONCLUSION AND RECOMMENDATION

As explained above, the ALJ's decision is supported by substantial evidence and should be affirmed. Therefore, **IT IS RECOMMENDED** that:

1. the Commissioner's decision be found to be supported by substantial evidence and therefore **affirmed;**

2. Plaintiff's Motion for Summary Judgment (R. 20) be **denied;**

3. Defendant's Motion for Summary Judgment (R. 21) be **granted;** and,

4. Judgment be entered and this matter **stricken** from the active docket of the Court.

Specific objections to this Report and Recommendation must be filed within **fourteen (14)** days of the date of service or further appeal is waived. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985). A party may file a response to another party's objections within **fourteen (14)** days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b).

---

[6]As discussed above, the ALJ incorporated the limitation restricting Plaintiff to simple and some basic detailed tasks to accommodate the limitations posed by her mental impairments.

Dated this 2nd day of June, 2014.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\DATA\social security\13-217 Helton R&R.wpd